UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

CHAD A. JORGENSEN,

        Petitioner,

        v.                                                  Case No. 14-C-1490

EDWARD F. WALL,

        Respondent.

ORDER DENYING CHAD JORGENSEN'S PETITION FOR WRIT OF HABEAS CORPUS, DISMISSING CASE, AND DENYING CERTIFICATE OF APPEALABILITY

After denying without prejudice Chad Jorgensen's motion for appointment of counsel, the court gave Jorgensen additional time to file a reply brief. To date, Jorgensen has not filed a reply or otherwise supplemented his earlier pleadings. Hence, the court will proceed to rule on the merits of the pending 28 U.S.C. § 2254 petition, which challenges his November 25, 2008, judgment of conviction in Langlade County on one count of solicitation to commit first-degree intentional homicide. *State v. Jorgensen*, Langlade County Circuit Court, Case No. 2008CF56. Jorgensen received a five-year sentence, with three years of extended supervision. He appealed the judgment of conviction, as well as the order denying his postconviction motion alleging ineffective assistance of counsel. The Wisconsin Court of Appeals affirmed the judgment of conviction in a June 28, 2013, per curiam decision, and the Wisconsin Supreme Court denied his petition for a writ of certiorari. *Jorgensen*, 2013 WI App 94, *cert. denied*, 2014 WI 3. Although Jorgensen was discharged from the custody of the Wisconsin Department of Corrections in March of 2016, he was in custody when his petition was filed. Thus, he satisfied the jurisdictional

requirement of § 2254(a) and there are sufficient collateral consequences to defeat a finding of mootness.

Briefly, Jorgensen and his wife Kelly divorced following ten years of marriage. After Jorgensen failed to pay a $60,000 property settlement, he was sentenced to 90 days in jail commencing January 1, 2008. While in jail, Jorgensen met Ryan Becker (a/k/a Andrew Conley) – a man with 16 prior convictions and five pending criminal charges. At some point Becker reported to jail officials that Jorgensen wanted to have his wife killed. Becker wore a wire in exchange for being released from jail and he recorded two conversations with Jorgensen outside of the jail on March 22 and 26, 2008.

At trial, the district attorney questioned Becker and Jorgensen using various portions of the transcripts of the recordings. The recordings were not played to the jury; however, the transcripts of the recorded conversations were prepared by the defense, introduced into evidence, and provided to the jury. Additionally, an employee of Jorgensen's cleaning business, Kevin Zarda testified that Jorgensen complained "all the time about how much he owed Kelly, and his alimony payments, and child support payments." Zarda said that Jorgensen talked about wishing Kelly was dead and that he should have someone kill her. Another employee, Matthew Sanford, who had two prior convictions, testified that Jorgensen said he wished Kelly would die, asked about purchasing a gun, and told him that Becker would be willing to kill Kelly. However, on cross-examination, Sanford admitted that he gave a prior statement to an officer that he never thought Jorgensen was serious about having Kelly killed. Finally, Kelly testified that Jorgensen told her "you better watch your back, or watch over your shoulder," and that she "might not wake up in the morning."

Jorgensen took the witness stand, and testified that he never solicited Becker to murder his wife, never offered Becker anything to kill Kelly (cash, a vehicle, or lifetime job), and never provided Becker with a firearm. Indeed, he testified that he had no intention that Kelly be harmed. Moreover, Jorgensen admitted that he thought Becker wanted to kill Kelly and that he never did anything about it. According to Jorgensen, he was just joking with Becker and that "all of this was just talk."

The trial court limited defense counsel on cross-examination. In the recorded conversations, Becker indicated he would rather commit suicide than return to prison. Becker testified that he was not serious; although, he made a suicide attempt while in jail in March 2008. The trial court concluded that the attempt was not probative of Becker's bias or motivation for falsifying testimony, inflammatory in nature, and extremely prejudicial. Similarly, defense counsel wanted to introduce evidence that Kelly called the police on 19 occasions but never reported that Jorgensen threatened her life. The court allowed counsel to ask Kelly whether she ever reported threats to the police but determined that the prior incidents or police reports were irrelevant and would confuse the jury.

Additionally, the trial court granted defense counsel's request for an entrapment instruction. However, counsel never mentioned the entrapment instruction in closing. Instead, he argued that Jorgensen did not commit the crime. Rather, Becker contacted the detective to get out of jail, and controlled the conversations with Jorgensen even after Jorgensen "called it off."

After the jury returned a guilty verdict, Jorgensen filed a postconviction motion for a new trial, alleging ineffective assistance of counsel. His trial attorney, James Connell, testified at the postconviction hearing regarding the use of the transcripts, the entrapment

3

discussion, and the cross-examination of Becker and Jorgensen. The trial court denied Jorgensen's postconviction motion finding that trial counsel was not ineffective and had made rational decisions about trial strategy. Trial counsel testified that he had prepared transcripts of Jorgensen's recorded discussions with Ryan Becker for purposes of cross examination, but there was extraneous information on the recordings from which the transcripts were prepared and parts of the recordings were difficult to hear. Some parts of the recordings may have been detrimental to Jorgensen's case.

Under AEDPA, "a federal habeas petition may be granted only if a state court's ruling on a federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1) & (2)). This is a difficult standard to meet and highly deferential. *Id.* (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, 179 L. Ed. 557 (2011). Further, this deferential standard of review applies only to claims that were actually adjudicated on the merits in state court proceedings. *Id.*. "The operative decision under review is that of the last state court to address a given claim on the merits." *Id.*

Jorgensen first attacks the use of selected excerpts from the transcripts of recorded conversations on the grounds that it deprived him of a fair trial by distorting the meaning and tenor of his conversations with Becker, and that the rules of evidence in Wisconsin ("best evidence rule") would have favored the admission of the audio recordings to supplement the transcripts. Along the same lines, Jorgensen maintains that counsel was ineffective in failing to require the state to play the recordings, and that the inaccurate transcription of an

4

"exculpatory and critical part" of the conversation requires a new trial in the interest of justice. The court turns to the use of the selected excerpts from the transcripts of Jorgensen's recorded conversations.

Jorgensen's brief does not include citations to the record or the portions of the transcripts to which he objects. Nevertheless, he raised these issues in his postconviction motion and on appeal. Jorgensen maintained that the jury was left to discern his intent from "snippets of his conversations with Mr. Becker, read into evidence from a written transcript." In rejecting these claims, the trial court noted that the jury requested and received copies of the transcripts prepared by the defense and that defense counsel never objected to the use of the transcripts at trial. On appeal, the Wisconsin Court of Appeals ruled as follows:

> Jorgensen's argument that using excerpts of the transcripts denied him a fair trial fails for several reasons. First, regarding any defects in the transcripts or the manner in which Becker read from them, the jury was provided with a copy of the transcripts and could read for itself who was speaking and could see the blanks left by the transcriber. While there were other errors in the transcript, Jorgensen exaggerates their magnitude as they do not relate to the most damning part of the conversation. The State's case did not turn on the inaccuracies in the transcripts, and the prosecutor did not rely on them in making his case. In addition, Jorgensen's trial counsel did not object to the State's use of the transcripts at trial. Therefore, any challenge to the use of the transcripts must be brought in the context of ineffective assistance of counsel.
>
> Jorgensen requests that this court grant a new trial in the interest of justice because the real controversy was not fully tried. Use of the written transcripts in lieu of the recordings themselves does not prevent the controversy from being fully tried. Our review of the recordings supports the finding that Jorgensen was serious about having Kelly killed and solicited Becker to kill her for $10,000.

*Jorgensen*, 2013 WI App 94, ¶¶ 13, 14. In his briefing before this court, Jorgensen concedes that "[a]ny challenge to the use of the transcripts must be brought in the context of ineffective assistance of counsel. If Jorgensen intended to raise this as a separate claim,

5

the Wisconsin Court of Appeals' decision was not contrary to or an unreasonable application of clearly established law and did not rest on an unreasonable determination of the facts. Further, Jorgensen's reference to the "best evidence" rule, Wis. Stat. § 910.02, raises a state evidentiary issue that is not cognizable in federal habeas relief.

Jorgensen's argument that he is entitled to a new trial due to errors in the transcripts used at trial is unavailing as well. On appeal Jorgensen argued that the court had discretionary authority, pursuant to Wis. Stat. § 752.35, to reverse a judgment of conviction when it appears that the real controversy had not been fully tried. However, to the extent that the argument was based on a Wisconsin statute rather than Constitutional law, it would not be cognizable in habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") Second, the magnitude of the error is overstated. The parties agreed that in the recording Becker said to Jorgensen at the end of their March 22 conversation: "All right, so like I said, think about that offer." However, the transcript produced by the defense read:

Andrew: All right, so I guess I've got to think about that offer.
Chad: All right.

Under either version, there is a suggestion of an offer but Wisconsin law required more than a suggestion of an offer. A conviction for solicitation to commit first-degree intentional homicide requires proof that: (1) the defendant intended that the crime of first-degree intentional homicide be committed; and (2) the defendant advised another person, by either the use of words or other expressions, to commit the crime of first-degree intentional homicide, in a manner that indicated, unequivocally that the defendant intended that crime

be committed. Wis. Stat. § 939.30(1); Wis JI—Criminal 550. Additionally, Jorgensen's focus on this single statement ignores the rest of that conversation in which Jorgensen said that he'd "be good for it" and give Becker "half up front." Ultimately, neither the state nor the defense relied on erroneous transcription during testimony or during arguments.

Next, Jorgensen raised two ineffective assistance of counsel claims: (1) counsel should have requested that the court play the recordings rather than rely on the transcripts, and (2) counsel should have argued the entrapment defense in closing. Both issues were addressed during a postconviction motion hearing wherein defense counsel, Attorney Connell, testified regarding his decisionmaking.

The Wisconsin Court of Appeals discussed the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and concluded that "[c]ounsel's decision to rely on the transcripts constituted a reasonable trial strategy." 2013 WI App 94, ¶ 15. After listening to the recordings, the Court of Appeals concluded that a jury could reasonably find that Jorgensen was serious and that it was reasonable for counsel to fear that the recordings would harm the defense. Similarly, this court has reviewed the March 22, and March 26, 2008, audio tapes (Wis_10011 and 10002), transcripts of the tapes, trial testimony, and the hearing on the postconviction motion, and concludes that the Court of Appeals' decision was not an unreasonable application of *Strickland* or an unreasonable determination of the facts. Counsel testified during the hearing on the postconviction motion that he had the transcripts prepared so that he could cross-examine key witnesses, but was concerned with the quality of the audio tapes and the use of tapes in the courtroom. Further, he didn't want "some of the words that Chad used coming from his own mouth to be heard in front of the jury. Because, you know, he

7

did say things that I didn't think he was serious about, but not something you want to hear in the courtroom." Defense counsel also testified that he thought those words coming from Chad "would not help our case." Having heard the audio tapes, the court agrees that it was not deficient performance where the tapes undermine Jorgensen's position at trial that he was never serious in his discussions with Becker. Specifically, the discussions about buying an unmarked handgun off the streets of Milwaukee, his "loathing" of his ex-wife, and using a wood chipper do not sound like a joke or bolster his defense.

As for Jorgensen's other claim of ineffective assistance of counsel, the Wisconsin Court of Appeals concluded that trial counsel could reasonably believe the jury would not be impressed by an argument that Jorgensen did not intend to kill Kelly, but if he did, he was entrapped. 2013 WI App 94, ¶ 17. The Court of Appeals explained that the entrapment defense was not "particularly strong" where the evidence pointed to Jorgensen's "predisposition to having Kelly killed." *Id.* Moreover, counsel argued that Jorgensen did not commit the crime while simultaneously pointing out statements of a detective about planting a seed and making Jorgensen bite. *Id.* Taking this approach, defense counsel allowed the jury to consider entrapment without having to concede that Jorgensen was otherwise guilty of the offense. *Id.* Notably, in Wisconsin, the defense of entrapment is an affirmative defense that comes into play only where the accused would otherwise be found guilty because all elements of the crime had been proven beyond a reasonable doubt. *State v. Saternus*, 127 Wis. 2d 460, 468, 381 N.W. 2d 290 (1986).

Notably, counsel conceded at the March 9, 2012, postconviction hearing that it would have been difficult to argue in the alternative - that Jorgensen never solicited Becker to kill his ex-wife, but if he did it was only because he was entrapped by law enforcement.

8

Instead, it was counsel's approach to argue that Becker (a/k/a Andrew Conley) was a "con man and a liar, a man who set up the sheriff's department and set up Chad Jorgensen for the sole purpose of earning favorable treatment from law enforcement and for earning early release from jail." Throughout the trial, defense counsel maintained that Becker was a liar who "lied to mental health personnel to get out of jail," "lied to the sheriff about the hours, work hours so he can get out of jail," and "lied to Chad Jorgensen from the first moment he met him." Defense counsel even told the jury that Becker would lie to them.

In his closing, defense counsel continued to argue that Jorgensen did not commit the crime but that he was framed by Detective Baucknecht and Becker:

> Detective Bauknect told Becker we can plant the seed. Investigator Bauknecht told Becker, tell him whatever it is that you can tell him to make him bite. Investigator Bauknecht told Becker he needed to plant the seed with him.
>
> Ladies and gentlemen, Chad Jorgensen didn't solicit the commission of the crime. Ryan Becker did. Ryan Becker has done it before.
>
> ....
>
> There is a reasonable hypothesis consistent with innocence in this case. That hypothesis is far more reasonable than the perjury you heard from Ryan Becker.

Because it appears from the record that trial counsel's decision to argue Jorgensen's innocence was a calculated move, the Wisconsin Court of Appeals did not err in its application of *Strickland*.

Finally, Jorgensen maintains that he was denied his right to confront his accusers when the court denied his request to cross-examine his ex-wife regarding her testimony about threats to her safety and to cross-examine Becker about his March 2008 suicide attempt while jailed. Although Jorgensen raised the issue on appeal, he did not frame it in

9

constitutional terms and the state has asserted procedural default. In any event, this court does not find a violation of the Confrontation Clause. The United States Supreme Court has held generally that trial courts have wide discretion to limit cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). As long as the trial court does not curtail cross-examination to the point that the defendant is unable to expose a bias or motivation to lie, the reasonable limitations imposed by the court do not rise to the level of a Sixth Amendment violation. *Id.* at 678–79; *see also United States v. Sasson*, 62 F.3d 874, 882 (7th Cir.1995). "The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295, 88 L. Ed.2d 15 (1985) (per curiam ). Accordingly, "If the defendant is given sufficient opportunity "to expose a motive to lie, it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury." *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994). The fundamental question when dealing with potentially cumulative cross-examination is "whether the jury had sufficient information to *make a discriminating appraisal of the witness's motives and bias."* Id. (citations and internal quotations omitted).

During the trial, the court sent the jury out of the courtroom to hear argument regarding the admissibility of the testimony. Defense counsel explained that Kelly "called about noisy neighbors, dog in her yard, people stealing her pool cue, smoking marijuana next door and all sorts of pretty insignificant things. But she forgot to tell the police that her husband threatened her life on numerous occasions." The court limited defense counsel to asking whether or not she called the police 19 times and ever reported a threat to herself.

10

However, the trial court was reluctant to allow "a trial within a trial" on each of the incidents. These calls, according to the trial court, were irrelevant and potentially confusing to the jury.

The Wisconsin Court of Appeals rejected Jorgensen's arguments regarding the exclusion of such evidence for several reasons. First, the threats were not central to the State's case. 2013 WI App 94, ¶ 18. The court allowed defense counsel to ask whether Kelly reported the alleged threats, but declined to allow testimony regarding each of the nineteen incidents. *Id.* According to the Court of Appeals, such testimony would have been"cumulative, confusing, for the jury, and a waste of time." *Id.* Similarly any testimony regarding Becker's suicide attempt had "limited probative value that was far outweighed by its potential to unduly prejudice or confuse the jury." As stated by the trial court, the suicide attempt did not go "to the issue of either bias or motivation for falsifying testimony, and in addition to that, it is inflammatory in nature" and therefore inadmissible. During his cross-examination of each witness, defense counsel was able to cross-examine Kelly about prior threats and illicit testimony regarding Becker's suicide threats. Hence, this court finds there was no violation of the Confrontation Clause.

Because Jorgensen's habeas petition will be denied, Rule 11(a) of the Federal Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). In view of this decision on the merits of Jorgensen's claims, the applicable standard is:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that ... includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

11

> that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (internal quotation marks omitted). Settled precedent underlies the decision in this case. Hence, Jorgensen does not meet the applicable standard for granting a certificate of appealability.

Now, therefore,

IT IS ORDERED that Chad Jorgensen's petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that this case is dismissed with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 27th day of January, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C. N. Clevert, Jr.
U.S. District Judge

12